IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MONISHA PHILLIPS
*Plaintiff*

      v.

UNIVERSITY OF MARYLAND
BALTIMORE COUNTY, *et al.*,
*Defendants.*

Civil Action No. ELH-19-570

## MEMORANDUM OPINION

In this employment discrimination case, Monisha Phillips, the self-represented plaintiff, has sued her former employer, University of Maryland Baltimore County ("UMBC"), for the second time. *See Phillips v. Univ. of Md. Balt. Cty.*, CCB-15-02066 (hereinafter, "*Phillips I*").[1] She has also sued David Gleason, UMBC's General Counsel, and Maryland Assistant Attorney General Erik Delfosse. ECF 1 (the "Complaint"). I shall refer to the case sub judice as "*Phillips II*."

Plaintiff alleges in *Phillips II* that she was wrongfully terminated in retaliation for engaging in protected civil rights activities, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* Further, she challenges the validity of her termination under a Memorandum of Understanding ("MOU") between UMBC and her union. Ms. Phillips seeks back pay, a "neutral job reference," the removal of negative notations from her personnel records, and restoration of her retirement benefits. *Phillips II*, ECF 1 at 7.

---

[1] *Phillips I* was filed in July 2015 against UMBC and numerous individuals. *Id.*, ECF 1. It was originally assigned to me. However, on February 15, 2018, it was reassigned to Judge Blake. In the case, I authored the rulings affixed with the case number ELH-15-2066; Judge Blake issued the rulings identified by case number CCB-15-2066. Notably, plaintiff was represented by counsel in *Phillips I*.

Defendants jointly filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6). *Phillips II*, ECF 8. The motion is supported by a memorandum (ECF 8-1) (collectively, the "Motion") and eight exhibits. *Id.*, ECF 8-2 to ECF 8-9. Ms. Phillips opposes the Motion (*id.*, ECF 17, the "Opposition") and has submitted two exhibits. *Id.*, ECF 17-1; ECF 17-2. Defendants have replied. *Id.*, ECF 18 (the "Reply").

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion.

## I. Background[2]

Ms. Phillips worked at UMBC from 1996 until 2017. *See Phillips II*, ECF 1, ¶ 8; *see Phillips I*, 2016 WL 1301276, at *1 (D. Md, Apr. 4, 2016). During that time, plaintiff claims that she "highly exceeded work expectations and was never disciplined or reprimanded." *Phillips II*, ECF 1, ¶ 2.

Beginning in 2008, Ms. Phillips worked as a part-time administrative assistant in UMBC's Psychology Department. *See Phillips I*, 2016 WL 1301276, at *1. On September 24, 2013, plaintiff filed a Charge of Discrimination with the EEOC, alleging discrimination on the basis of race and hostile work environment. *Phillips II*, ECF 1, ¶ 3; *see also Phillips I*, 2016 WL 1301276, at *2. In January 2015, plaintiff was "involuntary [sic] transferred" from the Psychology Department to the Enrollment Management Department, where she served as a Payroll Specialist. *Phillips II*, ECF 1, ¶ 4.

---

[2] Given the posture of the case, I shall assume the truth of the Complaint's allegations and draw all reasonable inference in plaintiff's favor. *See* Fed. R. Civ. P. 12(b)(1); *see, e.g.*, *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). In addition, as discussed, *infra*, the Court "may take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

On July 15, 2015, following receipt of a Notice of Right to Sue from the EEOC, Ms. Phillips, through counsel, filed suit against UMBC and several UMBC employees, asserting claims of discrimination, hostile work environment, and retaliation. *See Phillips I*, ECF 1; *see also Phillips II*, ECF 1, ¶ 5. On September 21, 2015, in *Phillips I*, this Court directed the Clerk to issue summons and ordered plaintiff to serve defendants in compliance with Fed. R. Civ. P. 4. *See Phillips I*, ECF 4. Summons were issued the next day. *Id.*, ECF 5.

However, plaintiff failed to provide any evidence regarding service of process. Accordingly, I issued a Show Cause Order on November 30, 2015, instructing plaintiff to effect service of process by December 16, 2015, or risk dismissal of her suit, without prejudice, pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8. *Phillips I*, ECF 6. Summons were returned executed as to the individual defendants on December 14, 2015. *Id.*, ECF 10. And, summons were returned executed as to UMBC on January 19, 2016. *Id.*, ECF 15.

By orders of April 6, 2016 (*id.*, ECF 17) and June 15, 2016 (*id.*, ECF 30), the Court dismissed *Phillips I* as to the individual defendants. Thus, *Phillips I* proceeded only against UMBC. Discovery ensued. Mr. Delfosse served as litigation counsel to UMBC in *Phillips I*, and Mr. Gleason served as UMBC's General Counsel. *See Phillips II*, ECF 1, ¶¶ 6, 7.

On March 29, 2017, in *Phillips I*, plaintiff was deposed by Mr. Delfosse. *Id.* ¶ 6. During the deposition, plaintiff admitted that she had taken personnel files of another UMBC employee, without authorization, in furtherance of her lawsuit. The following deposition testimony of Ms. Phillips is relevant:

> MR. DELFOSSE: These were all documents produced to us by your attorney. My question for you, you have stated that all three of these are personnel documents for Ms. McDougall and that they are part of her confidential file, personnel file. Do you know how these came into the possession of your attorney?
>
> MS. PHILLIPS: I gave them to him.

MR. DELFOSSE: You gave them to him?

MS. PHILLIPS: Yes.

MR. DELFOSSE: Did you receive them from Ms. McDougall?

MS. PHILLIPS: No.

MR. DELFOSSE: How did you obtain them?

MS. PHILLIPS: I made a copy from the file.

MR. DELFOSSE: So you accessed Ms. Mooney's — I'm sorry, Ms. McDougall's personnel file, copied documents from it, and submitted them as — and provided them to your attorney as part of your Complaint?

MS. PHILLIPS: I did.

MR. DELFOSSE: Does Ms. McDougall know you did this?

A: I didn't tell her I was doing this, so I don't know what she knows, but I didn't tell her that I was doing this.

MR. DELFOSSE: She didn't authorize it either?

MS. PHILLIPS: No, these are payroll documents, yes.

MR. DELFOSSE: If Ms. Schneider had accessed your file, obtained the exact same documents and submitted them, would you have been upset — without your knowledge?

MS. PHILLIPS: They're, they're files that belong to the university. I —

MR. DELFOSSE: I understand they belong to the university.

MS. PHILLIPS: Uh-huh.

MR. DELFOSSE: You have made copies of them, taken them for yourself in an effort to sue the university. Did you ask the university if you could make copies of these documents?

MS. PHILLIPS: I did not.

MR. DELFOSSE: So, you didn't ask the individual to whom, of whom the documents specifically pertained and in whose personnel file they belonged;

correct?

MS. PHILLIPS: Correct.

MR. SADRI [plaintiff's counsel]: At this point, I'm going to have to make an objection for the Fifth Amendment prohibition against self-incrimination.

MR. DELFOSSE: Thank you. Nothing further.

*See Phillips II*, ECF 8-4 (3/29/2017 Deposition Transcript) at 3, Tr. 366-68; *see also Phillips I*, ECF 78-6.

The day after the deposition of plaintiff in *Phillips I*, Jeffrey Sadri, plaintiff's attorney informed her that UMBC "was placing her on paid administrative leave." *Phillips II*, ECF 1, ¶ 8. Plaintiff claims in *Phillips II*, that this was contrary to an MOU entered into between UMBC and her union, AFSCME, which designated AFSCME as the exclusive bargaining representative for all nonexempt employees. *Id.* ¶ 10.[3] Further, plaintiff alleges that while she was on leave, UMBC "did not reach out to [her] about meeting, they did not inform [her] of any investigatory interviews, or mitigating conferences . . . ." *Id.* ¶ 13. And, Ms. Phillips alleges that UMBC asked Mr. Sadri for a two-week extension to conduct its investigation, which also was in violation of the MOU. *See id.* ¶¶ 15-19.

UMBC terminated plaintiff on May 3, 2017, "effective immediately," because of "severe and gross misconduct." *Id.* ¶ 20; *see* ECF 8-5 (Notice of Termination). The Notice of Termination stated, in part, *id.* at 1:

The grounds for your termination are severe and gross misconduct. Specifically, during your sworn testimony in your deposition of March 28, 2017, you admitted to knowingly and intentionally taking, accessing, and copying, from a locked filing cabinet, the confidential personnel files of other UMBC employees . . . . These

---

[3] AFSCME is an acronym for the American Federation of State, County and Municipal Employees. *See* About AFSCME, American Federation of State, County and Municipal Employees, https://www.afscme.org/about/we-are-afscme (last viewed Apr. 6, 2020).

confidential personnel files have been entrusted to your care as records custodian as part of your position as Administrative Assistant II with duties as payroll preparer in the Department of Psychology at UMBC. Neither the University nor the employee whose records you access and copied gave you permission to take these actions. . . .

Furthermore, as the current Administrative Assistant II and payroll preparer in the Office of Enrolment Management, you have similar access to confidential personnel files. In light of your admitted actions, the University cannot maintain you in a position having access to confidential materials.

Plaintiff alleges that UMBC terminated her "in retaliation" for her "filing a racial discrimination and retaliation law suit against them." *Phillips II*, ECF 1, ¶ 23; *see id.* ¶ 25. According to plaintiff, UMBC knew as of July 2016, "[a] full year before [plaintiff's] deposition," that she possessed personnel files, but "did not act then because [UMBC] knew those documents were not confidential and gross misconduct." *Id.* ¶ 23. And, she claims that UMBC "deliberately avoided following [its] own procedures in the MOU regarding the duty of the university prior to imposing sanctions" because it "did not want the union to be involved in this matter . . . ." *Id.* ¶¶ 24, 25.

On December 21, 2017, plaintiff filed a Charge of Discrimination with the EEOC against UMBC. *Id.*, ECF 8-6. On the form, she checked the box indicating that she claimed discrimination based on "retaliation." *Id.* at 2. In the Charge, Ms. Phillips complained that she was "discharged" from UMBC on May 3, 2017, and that UMBC did not provide a "reasonable explanation" for her termination. *Id.* She stated, *id.*: "I believe I have been retaliated against because I filed a charge with the EEOC as a result [sic] engaged in a protected activity in violation of Title VII of the Civil Rights Act of 1974 as amended, with respect to discharge."

Then, by Memorandum and Order of March 26, 2018, Judge Blake granted summary judgment in *Phillips I*, in favor of UMBC. *See Phillips I*, ECF 88, ECF 89; *see also* CCB-15-2066, 2018 WL 1474178, at *1 (D. Mar. 26, 2018).

Thereafter, on November 26, 2018, the EEOC issued a Notice of Right to Sue as to plaintiff's 2017 complaint of retaliation. *Phillips II*, ECF 8-7. This lawsuit (*Phillips II*) followed on February 22, 2019. *Id.*, ECF 1.

Because the docket did not indicate that Ms. Phillips had filed summons with the Clerk, the Court issued an Order on April 10, 2019, reminding plaintiff that she "bears the responsibility for effecting service of process on Defendants," *id.*, ECF 4 at 1, and warning her that "if there is no record that service was effected on Defendants, Plaintiff risks dismissal of this case." *Id.* at 4. Further, I instructed plaintiff as to how to effect service of process. I stated, *id.* at 1-2:

> Pursuant to Fed. R. Civ. P. 4(c)(2), service of a summons and Complaint may be effected by any person who is not a party and who is at least 18 years of age. Plaintiff is reminded that under Fed. R. Civ. P. 4(l), the person effecting service of the summons and Complaint must promptly notify the court, through an affidavit, that he or she has served Defendants.[l] Under Fed. R. Civ. P. 4(j), service upon a state, municipal corporation or other state–created governmental organization subject to suit shall be effected by delivering a copy of the summons and complaint to its chief executive officer; or by serving the summons and complaint in the manner prescribed by the law of the state for the service of summons or other like process upon any such Defendant. Maryland Rule 2-121(a) governs service of process on individuals; Maryland Rule 2-124(l) governs service on an officer or agency of a local government; Maryland Rule 2-124(j) governs service of process on the State of Maryland; and Maryland Rule 2-124(k) governs service of process on an officer or agency of the State of Maryland. Both LexisNexis and Westlaw provide free public access to the Maryland Rules.

Summons were issued on May 14, 2019. *Id.*, ECF 5. But, plaintiff never filed proof of service with the Court. Accordingly, on September 9, 2019, the Court issued a Show Cause Order, admonishing that failure to serve defendants by September 23, 2019, could result in dismissal, without prejudice, pursuant to Fed. R. Civ. P. 4(m) and Local Rule 103.8. *Id.*, ECF 6.

Summons were returned executed as to Mr. Delfosse and Mr. Gleason on September 20, 2019. *Id.*, ECF 7. Thereafter, defendants jointly moved to dismiss the Complaint on October 9,

2019, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6). *Id.*, ECF 8. Plaintiff's Opposition was due by October 23, 2019. *See* Local Rule 105.2(a).

However, on that date, Ms. Phillips filed a motion, requesting a 60-day extension to file her Opposition. *Id.*, ECF 10. She explained that she was having "health issues" and that she needed addition time "to consult/seek counsel to determine how to best respond to UMBC's pending motion." *Id.* Further, plaintiff asked the Court to "grant [her] additional time to serve summons" on UMBC. *Id.* By Order of October 30, 2019, the Court granted the motion, extending the deadline for plaintiff to file an Opposition to December 23, 2019. *Id.*, ECF 12.

On December 23, 2019, Ms. Phillips filed another request for extension, seeking to extend the deadline for her Opposition to January 23, 2020. *Id.*, ECF 13. In her motion, plaintiff explained that her delay was due to health issues, the complexity of the case, and the need to retrieve documents that were not in her possession. The Court granted the motion by Order of December 26, 2019, extending the deadline for plaintiff's Opposition to January 23, 2020. *Id.*, ECF 14.

On January 24, 2020, plaintiff sought yet another extension of time due to a "recent medical emergency . . . ." *Id.*, ECF 15. In her submission, plaintiff represented that defense counsel consented to the extension. I granted the request, setting a deadline of March 9, 2020, for plaintiff's Opposition, but cautioned that "[b]ecause plaintiff will have been afforded four-and-a-half additional months to respond to defendant's motion, the Court is unlikely to entertain future postponement requests with respect to the motion to dismiss." *Id.*, ECF 16 at 2.

Plaintiff filed her Opposition on March 9, 2020. *Id.*, ECF 17. Defendants timely replied on April 3, 2020. *Id.*, ECF 18.[4]

---

[4] Under normal circumstances, defendants' reply would have been due by March 26, 2020. *See* Fed. R. Civ. P. 6(d); Local Rule 105.2(a). However, due to the COVID-19 pandemic, all filing deadlines set to fall between March 16, 2020, and April 24, 2020, were extended by 42 days. *See*

## II.    Standard of Review[5]

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6).  *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  Of course, a plaintiff need not include "detailed factual

---

*In re: Court Operations Under the Exigent Circumstances Created by COVID-19,* Case 1:00-mc-00308, Standing Order 2020-05 (D. Md. Mar. 20, 2020).

[5]Although defendants reference Rule 12(b)(1) in their Motion, the "Legal Standard" section of the Motion makes no mention of Rule 12(b)(1).  Moreover, their arguments do not rely on 12(b)(1), which concerns subject matter jurisdiction.

allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the

factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id.* Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166 (citations omitted); *see also Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Kensington Volunteer Fire*

*Dep't v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) ) (emphasis in original) (citation omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Of relevance here, in the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 F. App'x. 200 (4th Cir. 2016); *see, e.g*., *Anderson v. Fed. Deposit Ins. Corp*., 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records"); *Schultz v. Braga*, 290 F.Supp.2d 637, 651 n. 8 (D.Md.2003) (taking judicial notice of dockets in state proceedings).

In this regard, I note that plaintiff's deposition testimony of March 29, 2017, was filed as an exhibit to UMBC's summary judgment motion in *Phillips I*. *See* ECF 78-6. Under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the

trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Motion is supported by eight exhibits. *Phillips II*, ECF 8-2 is a letter dated December 18, 2015, from Mr. Delfosse to Ms. Phillips concerning service of process on the Maryland Attorney General. ECF 8-3 contains a copy of summons in CCB-15-2066, dated December 22, 2015. ECF 8-4 are excerpts of Ms. Phillips's deposition from *Phillips I*. ECF 8-5 is UMBC's Notice of Termination. ECF 8-6 is plaintiff's Charge of Discrimination, dated December 21, 2017. ECF 8-7 is plaintiff's Notice of Right to Sue, issued on November 26, 2018. ECF 8-8 contains excerpts of the MOU between UMBC and AFSCME. And, ECF 8-9 is a copy of plaintiff's appeal to the Maryland Office of Administrative Hearings ("OAH") concerning a grievance that AFSCME filed on her behalf against UMBC in connection with her termination.

Plaintiff appended two exhibits to her Opposition. *Phillips II*, ECF 17-1 contains emails in connection with UMBC's investigation, excerpts of the MOU, and several pages of a transcript regarding an OAH hearing held on October 5, 2017. ECF 17-2 is an Affidavit of Ms. Phillips.

The Reply is supported by one exhibit. It is a copy of the decision rendered by an OAH administrative judge on December 13, 2019, finding that UMBC's termination of plaintiff's employment complied with the MOU. ECF 18-1.

In resolving the Motion, I may consider the following exhibits in *Phillips II*: the summons (ECF 8-3), deposition transcript (ECF 8-4), Notice of Termination (ECF 8-5), EEOC materials (ECF 8-6, ECF 8-7), the MOU (ECF 8-8), and the emails included in ECF 17-1. These exhibits pertain to events referenced in the Complaint, their authenticity is not contested, nor is their content disputed. *See, e.g.*, *Webb v. Potomac Elec. Power Co.*, TDC-18-3303, 2020 WL 1083402, at *2 (D. Md. Mar. 6, 2020) (considering EEOC materials referenced in the amended complaint); *Li Che*

*v. Hsien Cheng Chang*, PX-16-2665, 2017 WL 3383038, at *6 (D. Md. Aug. 7, 2017) (emails attached to complaint were integral). Further, I may take judicial notice of the OAH filings (ECF 8-9; ECF 17-1; ECF 18-1). *See Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 608 (D. Md. 2016) (collecting cases and considering orders of OAH under Rule 12(b)(6)).

In contrast, because the letter from Mr. Delfosse to plaintiff is neither referenced in the Complaint nor publicly available, I shall not consider ECF 8-2 in resolving the Motion. Similarly, with respect to Ms. Phillips's Affidavit, "[i]t is well-established that parties cannot amend their complaints through briefing or oral advocacy." *So. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *accord Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991), *aff'd*, 2 F.3d 56 (4th Cir. 1993). Thus, at this juncture, I shall not consider Ms. Phillips's Affidavit (ECF 18-2).

I am mindful that plaintiff is self-represented. Her pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."); *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot fashion claims for a plaintiff because she is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*,

475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278. What the Fourth Circuit stated in *Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at *1 (4th Cir. 1992) (per curiam) (unpublished), is also apt:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), cert. denied, 382 U.S. 966, 86 S. Ct. 458, 15 L.Ed.2d 370 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S. Ct. 1475, 89 L.Ed.2d 729 (1986).

### III.    Discussion

Defendants have moved to dismiss the Complaint as to the individual defendants on the ground that Title VII does not allow for individual liability. *Phillips II*, ECF 8-1 at 8. Likewise, to the extent that the Complaint asserts claims predicated on the MOU, defendants argue that Mr. Delfosse and Mr. Gleason cannot be held liable because they are not signatories to the MOU. *Id.* at 9. With respect to UMBC, defendants contend that dismissal is warranted under Fed. R. Civ. P. 12(b)(5) because plaintiff has failed to effect service on UMBC. *Id.* at 10-14. Dismissal under Fed. R. Civ. P. 4(m) and Local Rule 103.8 is appropriate, defendants assert, given that nearly eight months have elapsed since the suit's genesis and in light of the Court's repeated admonishments to effect service.

In her three-page Opposition, plaintiff largely focuses on the merits of her case, arguing strenuously that her termination is baseless and flouts the procedural requirements set forth in the MOU. *Id.*, ECF 17. Notably, she does not reference Mr. Delfosse. Regarding Mr. Gleason, plaintiff maintains that Mr. Gleason is liable for her termination because he "switched his role from Counsel to one of Employers to terminate [her] in retaliation . . . ." *Id.* at 1. As to the issue of service, Ms. Phillips argues that "UMBC should not be dismissed because [she] followed the direction of the court to serve process." *Id.*

## A. UMBC

As noted, defendants contend that UMBC should be dismissed from the suit, pursuant to Rule 12(b)(5), because plaintiff has failed to effect service on UMBC. *Phillips II*, ECF 8-1 at 10. Defendants acknowledge that it is within the Court's discretion to extend service under Rule 4(m), but they argue that plaintiff's failure to serve UMBC despite the Court's myriad reminders cuts against leniency. *Id.* at 12.

Service of process is a prerequisite for litigating in federal court; in its absence, a court simply lacks personal jurisdiction over the defendant. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 228 (4th Cir. 2019). Consequently, a defendant may seek dismissal of the suit for "insufficiency of service of process" under Fed. R. Civ. P. 12(b)(5).

Federal Rule of Civil Procedure 4 governs service of process. As is relevant here, Rule 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed." If a defendant is not served within that time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* Under Rule 4(m), "if the plaintiff shows good cause for the failure, the court must extend the time for service for an

appropriate period." In the context of 4(m), "good cause" entails "some showing of diligence on the part of the plaintiffs." *Attkisson v. Holder*, 925 F.3d 606, 627 (4th Cir. 2019). This occurs "when the failure of service is due to external factors, such as the defendant's intentional evasion of service." *Id.*

Several district judges in the Fourth Circuit have observed that it is unclear whether Rule 4(m) vests a court with discretion to grant an extension of the service deadline, in the absence of good cause. *See, e.g.*, *Escalante v. Tobar Constr.*, PX-18-980, 2019 WL 109369, at *1 n.1 (D. Md. Jan. 3, 2019); *Lehner v. CVS Pharmacy*, RWT-08-1170, 2010 WL 610755, at *2 (D. Md. Feb. 17, 2010); *Knott v. Atlantic Bingo Supply, Inc.*, JFM-05-1747, 2005 WL 3593743 (D. Md. Dec. 22, 2005); *Hoffman v. Balt. Police Dep't*, 379 F. Supp. 2d 778, 786 (D. Md. 2005). Nevertheless, even if good cause is no longer an absolute requirement under Rule 4(m), "the Court would still need to have some reasoned basis to exercise its discretion and excuse the untimely service: the Court must give some import to the rule." *Hoffman*, 379 F. Supp. 2d at 786; *see also Lehner*, 2010 WL 610755, at *3. Notably, courts in this district have concluded that dismissal is appropriate where the Court reminds the plaintiff of her obligation under Rule 4, and she nonetheless fails to effect service of process. *See, e.g.*, *Combs v. Shapiro & Burson LLP*, GJH-15-846, 2016 WL 1064459, at *4 (D. Md. Mar. 14, 2016); *McGinley v. Cent. Mortg. Co.*, 2015 WL 5052762, at *2 (D. Md. Aug. 25, 2015); *Rufus El v. Ocwen Loan Servicing, LLC*, 2014 WL 9943432, at *1 n.2 (D. Md. Mar. 13, 2014).

Plaintiff filed her Complaint on February 22, 2019. ECF 1. Therefore, pursuant to Rule 4(m), Ms. Phillips was required to serve UMBC by May 23, 2019. By Order of April 10, 2019, I directed plaintiff to submit completed summons to the Clerk, and I warned plaintiff that failure to effect service could result in the dismissal of her suit. ECF 4. Summons were issued on May 14,

2019. ECF 5. However, the docket did not indicate that plaintiff had served defendants. Therefore, by Order of September 5, 2019, I directed Ms. Phillips either to serve defendants by September 23, 2019, or show cause for her delay in effecting service. Plaintiff submitted proofs of service as to Mr. Delfosse and Mr. Gleason on September 20, 2019. To date, plaintiff has not provided any evidence that she has served UMBC.

In her Opposition, plaintiff does not contend that "good cause" exists to excuse her failure to serve UMBC. Rather, she posits that "UMBC should not be dismissed because [she] followed the direction of the court to serve process." *Phillips II*, ECF 17 at 1. This argument is unavailing. The Order of April 10, 2019, included clear instructions to plaintiff regarding how she must proceed with serving a State entity such as UMBC, referencing Fed. R. Civ. P. 4(j) and Maryland Rule 2-124(k). *Id.*, ECF 4 at 1-2. Plaintiff simply failed to heed those directions. On these facts, there is no justification to extend service.

Accordingly, I shall dismiss the Complaint as to UMBC, without prejudice, for failure to serve process in accordance with Fed. R. Civ. P. 4(m) and Local Rule 103.8. *See Attkisson*, 925 F.3d at 628 (noting that dismissal under Rule 4(m) "must be without prejudice").

### B. Individual Defendants

Plaintiff asserts that the individual defendants unlawfully terminated her from her position at UMBC in retaliation for engaging in civil rights activities protected under Title VII. *Phillips II*, ECF 1, ¶ 25. In addition, although plaintiff does not clearly assert a cause of action under the MOU, the Complaint focuses predominantly on alleged violations of the MOU. *See id.* ¶¶ 22-24, 29-30. In their Motion, defendants argue that, to the extent the Complaint trains these claims on Mr. Delfosse and Mr. Gleason, they fail as a matter of law because neither Title VII nor the MOU give rise to individual liability. ECF 8-1 at 8-9.

I begin with plaintiff's Title VII claim. Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2. It also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participation in a Title VII investigation or proceeding. *Id.* § 2000e–3; *see e.g., Young v. United Parcel Serv., Inc.*, ___ U.S. ____, 135 S. Ct. 1338, 1344 (2015); *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019); *Ray v. Int'l Paper Co.*, 909 F.3d 661, 666 (4th Cir. 2018); *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018); *Strothers v. City of Laurel*, 895 F. 3d 317, 326-27 (4th Cir. 2018); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 298 (4th Cir. 2015) (en banc).

To state a claim of retaliation under Title VII, a plaintiff must allege "(1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her and (3) there is a causal connection between the protected activity and the adverse action." *Evans*, 936 F.3d at 195; *see Strothers*, 895 F.3d at 327; *Smyth-Riding v. Sci. Eng'g Servs., LLC*, 699 F. App'x 146, 151 (4th Cir. 2017); *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005). The plaintiff must establish retaliation, either by direct evidence "or by proving that any non-retaliatory justification for the [adverse action] was pretextual." *Netter*, 908 F.3d at 938; *see Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015).

Plaintiff alleges that at the time of her termination, she had filed a charge of discrimination with the EEOC and was actively pursuing a discrimination lawsuit against UMBC. These are undeniably protected activities. *See* 42 U.S.C. § 2000e—3(a); *King v. Rumsfeld*, 328 F.3d 145,

151 (4th Cir. 2003), *cert. denied*, 540 U.S. 1073 (2003). Similarly, there can be no dispute that plaintiff's termination constitutes an adverse action. *See Strothers*, 895 F.3d at 328 (finding it "patently obvious and undisputed that termination is a materially adverse action").

However, a person can be held liable under Title VII in his or her individual capacity only if that person qualifies as an "employer" within the meaning of the statute. *See Brooks v. Arthur*, 626 F.3d 194, 203 (4th Cir. 2010) ("Title VII 'foreclose[s] individual liability'") (quoting *Lissau v. So. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998)); *Lissau*, 159 F.3d at 181 (holding that "supervisors are not liable in their individual capacities for Title VII violations"); *accord Spell v. Wright*, RBD-19-722, 2020 WL 247460, at *3 (D. Md. Jan. 16, 2020) (dismissing Title VII claims against employees); *Erskine v. Bd. of Educ.*, 197 F. Supp. 2d 399, 405 (D. Md. 2002) (concluding that plaintiff "cannot bring a Title VII action against the individual supervisors").

The Complaint clearly identifies UMBC as plaintiff's employer. *See* ECF 1, ¶¶ 1-2 (alleging that "I worked for the University for 16 years" and "[a]t all times [I was] employed by the University"). And, plaintiff does not allege that Mr. Delfosse or Mr. Gleason were her employers. This is for good reason: neither Mr. Delfosse nor Mr. Gleason would qualify as an "employer" for the purposes of Title VII. *See* 42 U.S.C. § 2000—(e)(b) (defining employer as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current of preceding calendar year"). Indeed, in Ms. Phillips's prior lawsuit against UMBC, I dismissed her Title VII claims against individual defendants for this very reason. *See Phillips I*, 2016 WL 1302176, *4. Therefore, plaintiff's Title VII claim against the individual defendants must fail.

To the extent that plaintiff seeks to hold the individual defendants liable for alleged violations of the MOU, these claims are also miscast. Individuals are not subject to suit for

violations of a collective bargaining agreement. *See Jackson v. Kimel*, 992 F.2d 1318, 1325 n.4 (4th Cir. 1993) (observing that employees are not suable under § 301 of the Labor Management Relations Act); *accord Mister v. Savia*, DKC-14-0390, 2014 WL 1468146, at *2 (D. Md. Apr. 14, 2014); *Ali v. Giant Food LLC/Stop & Shop Supermarket Co., LLC*, 595 F. Supp. 2d 618, 625 (D. Md. 2009). Thus, plaintiff cannot pursue Mr. Delfosse or Mr. Gleason for purported violations of the MOU arising from her termination.

In sum, because plaintiff's claims cannot proceed against the individual defendants, I shall dismiss the suit as to them.

## IV.    Conclusion

For the foregoing reasons, I shall grant the Motion (ECF 8).  An Order follows, consistent with this Memorandum Opinion.


Date: April 10, 2020                                 _____/s/_____
                                                     Ellen L. Hollander
                                                     United States District Judge